The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CITY OF SEATTLE, | No. 2:25-cv-01435-BJR |
| Plaintiff, | PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| DONALD J. TRUMP, *et al.*, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

## I.  INTRODUCTION

The Trump Administration's *ultra vires* actions imperil approximately $370 million in congressionally appropriated funds to the City of Seattle. These funds impact vital services having nothing to do with "DEI" or "gender ideology," running the gamut from emergency fire and rescue services to affordable family housing. The Constitution and the structure of our democratic republic make plain that the Office of the President has no power to retroactively dictate how Seattle may accept or spend these critical funds. The City of Seattle is entitled to broad injunctive relief from application of the unlawful federal grant conditions set forth in the Trump Administration's Anti-Diversity and Gender Orders.

In the face of overwhelming contrary legal authority, the Administration insists that Seattle's decision not to join the plaintiffs in *King County v. Turner*, No. 2:25-cv-00814-BJR, as

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 1
(Case No. 2:25-cv-01435-BJR)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

to the more limited relief they were seeking, is somehow probative of a lack of imminent harm flowing from application of the Orders to Seattle's federal grants. But even while the one arm of the Administration responded to Seattle's preliminary injunction motion by arguing no imminent harm, just days ago another arm, the Department of Housing and Urban Development ("HUD"), demonstrated that Seattle is indeed imminently threatened. On September 23, 2025, HUD directly threatened Seattle's Community Development Block Grant ("CDBG") funds based on a purported lack of compliance with the Anti-Diversity and Gender orders. The problem, according to HUD's September 23 communication, is that part of Seattle's fiscal year 2025 budget plan discusses "equity" and support for marginalized communities. *See* Supplemental Declaration of Tanya Kim ("Kim Decl.") (attaching and describing HUD communication). Just three days later, on September 26, HUD rejected Seattle's budget plan. *Id.* [1] There is no question that Defendants will continue to enforce the unlawful grant conditions unless specifically enjoined. Accordingly, Seattle respectfully requests that the Court issue the requested relief.

## II. ARGUMENT

**A. This Court Has Already Found that the Unlawful Grant Conditions Cause Imminent Harm.**

Defendants do not dispute that they are actively seeking to enforce the Anti-Diversity and Gender Orders against federal grant recipients, including Seattle. Seattle's evidence details various agency letters, memos, funding conditions, and grant agreements that explicitly incorporate the Anti-Diversity's order certification requirements and the Gender Order's broad prohibition on undefined "promotion" of "gender ideology" and warn Seattle about the financial consequences of failing to comply with these conditions. *See generally* ECF No. 9–14. In fact, as noted above, just last week, during the briefing on this motion, HUD questioned Seattle's "certification that the

---

[1] Unless HUD changes its position or this Court intervenes, the City stands to lose almost $9 million in already allocated HUD CDBG funding. Kim Decl. ¶ 5. As a result, the City may need to seek emergency relief to block the agency's unlawful withholding of funding due to its enforcement of the Orders.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 2
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

[CDBG] funds … will be administered in conformity with applicable laws, including Executive Orders." *See* Kim Decl., Ex. A. And on Friday, September 26, HUD rejected Seattle's Consolidated Plan submission, stating that it would provide a reason for denial of the funding within 15 days of the date of notice. *Id.*, Ex. C. Despite this mountain of evidence establishing that Defendants intend to enforce the orders against Seattle, the Administration incredulously maintains that "the City's predictive harms are too speculative." ECF No. 18 at 4.[2] The Court already rejected this argument in *Turner* and should reject it here too.

Defendants do not even attempt to argue *why* Seattle's harm is speculative other than to suggest that the City cannot possibly be harmed by the Orders because they merely "call attention" to pre-existing legal requirements, such as the Civil Rights Act. *Id.* at 5. As this Court has recognized, the Administration conveniently ignores its own pronouncements that "demonstrate[] that Defendants interpret federal anti-discrimination laws in a manner that is inconsistent with well-established legal precedent." *King County, et al. v. Turner*, 2025 WL 2322763, at *12 (W.D. Wash. Aug. 12, 2025). These include:

- **The September 23, 2025 threat** by HUD regarding CDBG funds. *See* Kim Decl., Ex. A.
- **The DOT Letter** stating that "*any* policy, program, or activity" that is "designed to achieve so called 'diversity, equity, and inclusion,' or 'DEI[ ]' goals[ ] *presumptively* violates Federal law" even if the policy, program, or activity is "described in neutral terms." ECF No. 14 at 7 (emphasis added). This Court correctly noted that this broad statement "is inconsistent with well-established federal precedent that requires entities that receive

---

[2] In a recent press interview, President Trump himself recognized the dire need for grant funds, noting that Seattle was "run by radical left lunatics" and that he may seek to bar Seattle from hosting the FIFA World Cup in 2026 due to safety concerns. In fact, as detailed in Mr. Maxey's declaration, ECF No. 11, ¶ 22, Seattle uses funds from DHS's Securing the Cities grant program to protect public safety during planned public events like the World Cup and intends to do so again in 2026. *See* Tyler Cunnington, *President Trump Suggests Cities Deemed Unsafe Could Lose FIFA World Cup Matches*, KOMO NEWS (Sept. 26, 2025), https://komonews.com/news/local/president-trump-suggests-cities-deemed-unsafe-could-lose-fifa-world-cup-matches.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 3
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

federal funds to provide reasonable accommodations for qualified individuals with disabilities so that they can participate in their programs." *Turner*, 2025 WL 2322763, *12 (citing cases).

- **U.S. Deputy Attorney General Todd Blanche's May 19, 2025 memorandum to all United States Attorneys** stating that federal fund recipients may run afoul of the False Claims Act if they allow transgender individuals to use bathrooms consistent with their gender identities.[3] This Court correctly observed that this "statement contradicts the decisions of multiple appellate courts that have held that federal law forbids discrimination based on transgender status." *Id.* (citing cases).

- **U.S. Attorney General Pam Bondi's July 29 Memorandum "Guidance for Recipients of Federal Funds regarding Unlawful Discrimination,"[4]** which "clarifies the application of federal antidiscrimination laws to programs or initiatives that may involve discriminatory practices, including those labeled as Diversity, Equity, and Inclusion ("DEI") programs." The memo states that the use of "[f]acially neutral criteria (e.g., 'cultural competence,' 'lived experience,' geographic targeting)" can "violate federal law if designed or applied with the intention of advantaging or disadvantaging individuals based on protected characteristics." The Court held in *Turner* that *"*[t]his "clarification" . . . is inconsistent with Supreme Court precedent that has "consistently declined to find constitutionally suspect" the adoption of race-neutral criteria "out of a desire...to improve racial diversity and inclusion"—even where the decision-maker was "well aware" the race-neutral criteria "correlated with race."). *Id.* at *13 (citing cases).

Given these pronouncements, which hail from the highest levels of federal government,

---

[3] *See* Memorandum from Todd Blanche, *Civil Rights Fraud Initiative* (May 19, 2025), https://www.cu.edu/doc/dag-blanche-memo-civil-rights-fraud-initiative-20250519pdf.

[4] *See* Memorandum from Pam Bondi, *Guidance for Recipients of Federal Funding Regarding Unlawful Discrimination* (July 29, 2025), https://www.justice.gov/ag/media/1409486/dl.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 4
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the assertion that the Anti-Diversity and Gender Orders "merely call attention to [the City's] pre-existing legal obligations" is unpersuasive. ECF No. 18 at 5. This Court correctly observed that grant recipients like Seattle "are at the mercy of Defendants' interpretation of federal antidiscrimination laws, regardless of how those laws are interpreted by the courts," and thus the harm they face by these Orders is imminent and irreparable. *Turner*, 2025 WL 2322763, at *13; *see also id.* at *16 ("Defendants have not denied that Plaintiffs would be assuming this risk by not signing the agreements. They merely complain that Plaintiffs have not provided details as to when exactly that loss will occur. But this argument misses the point. It is this looming risk itself that is the injury, and one that Plaintiffs are already suffering.").

The Administration is also wrong to argue that Seattle's injury is purely monetary. This assertion ignores the reality of grant funding and multi-year project planning, not to mention the City's operations and the Seattle residents who rely upon these projects. *See, e.g.*, *Turner*, 785 F. Supp. 3d 863, 891 (W.D. Wash. 2025) (observing loss of CoC funding would result in irreparable injuries to Plaintiffs and their operations, and to the vulnerable populations they serve). Only an injunction can address Seattle's harms and should thus be issued here.

**B.     The Orders Impose New Legal Requirements in Violation of the Separation of Powers and Spending Clause.**

The Administration does not refute the well-established principle that the Executive may not legislate nor create new conditions for Congressionally appropriated funds. Instead, the Administration repeats its argument from *Turner* that the grant conditions in the Orders are "not new" or that they are somehow authorized by existing law. Those arguments are unavailing here.

As discussed above, the evidence shows that the Orders were issued to advance the Administration's interpretation of federal discrimination law, which is at odds with existing case law. While it may be true that federal grant conditions have long required recipients to agree that they will not engage in unlawful discrimination in violation of the Civil Rights Act, this raises the

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 5
(Case No. 2:25-cv-01435-BJR)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

question of why the Administration saw fit to issue the Orders in the first place, given that existing laws and grant requirements already prohibit racial and gender discrimination. As the above pronouncements make clear, the answer is that the Administration wanted to go further than the legislature; it wanted to advance its own novel Anti-DEI agenda, leveraging federal grant funds and the threat of False Claims Act ("FCA") investigations and penalties to advance its policy goals.

Contrary to Defendants' assertions, no existing federal law authorizes the Administration's actions. Section 2000d-1 of the Civil Rights Act requires recipients of federal grants to comply with federal anti-discrimination laws and directs "federal agencies to enforce" such compliance through "rules, regulations, or orders of general applicability." The statute does not authorize the President to promulgate unilateral requirements related to compliance with anti-discrimination laws—which would violate separation of powers principles—let alone requirements that go beyond existing law and prohibit lawful activities.

The HUD, DOT and DHS regulations cited in the Opposition are also inapposite. As a threshold matter, even lawfully promulgated agency regulations cannot constitutionally confer any power on the Executive to impose requirements related to federal grant funds by executive order. *See Turner*, 2025 WL 2322763, at *14 ("agency regulations are not the equivalent of statutory authority"). In any event, as this Court previously held, the Anti-Diversity Order's funding conditions "conflict with statutory provisions." *Id*. For instance, statutes authorizing various HUD grant programs *require* consideration of diversity when allocating grant funds. *See, e.g.*, 42 U.S.C. § 5307(b)(2) (HUD Secretary is required to set aside CDBG funds for "[s]pecial purpose grants," including grants to "historically Black colleges."); *id*. § 5307(c) (CDBG funds to be allocated to provide "assistance to economically disadvantaged and minority students"); *see also, e.g.*, *id*. 12831(a) (HOME grant recipients "to establish and oversee a minority outreach program … to ensure the inclusion, to the maximum extent possible, of minorities and women, and entities owned by minorities and women … in all contracts[ ] entered into by the participating jurisdiction.").

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 6
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The Administration incorrectly asserts that the Anti-Diversity Order's FCA certification requirement accords with existing FCA case law. ECF No. 18 at 5. In reality, the FCA certification represents an *ultra vires* amendment to the FCA's materiality standard. The Civil Rights Act directs federal agencies to ensure that recipients of federal assistance comply with anti-discrimination laws. However, it does not follow from this statutory directive that compliance with civil rights laws—especially the Administration's "interpretation" of those laws—is also "material" to a payment decision under the FCA. Indeed, *Universal Health Services v. U.S.* explained that "[a] misrepresentation cannot be deemed material [under the FCA] merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." 579 U.S. 176, 194 (2016). To be material, the requirement must go "the very essence of the bargain." *Id*. at 194. Thus, in a recent FCA concurrence, Justice Thomas rejected an attempt to make minority hiring requirements "material" to the government's decision to pay the state transportation department for bridge repairs, reasoning that such hiring provisions "were irrelevant to the contracts' fundamental purpose—bridge repair." *Kousisis v. U.S.*, 605 U.S. ----, 145 S. Ct. 1382, 1402 (2025) (Thomas, J., concurring). In this case, the Administration's injection of anti-DEI and gender ideology terms fares no better.

The Anti-Diversity Order's certification requirement is at odds with legal precedent. It purports to declare that avoidance of "illegal DEI and DEIA policies" is a material condition in all federal grant agreements, regardless of their subject matter. As such, the certification requirement represents an *ultra vires* attempt by the Trump Administration to either amend the FCA or re-interpret it, actions that are the exclusive purview of Congress and the federal judiciary, not the Executive. *See, e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 438 (1998) ("There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes.").

Defendants also incorrectly maintain that the grant conditions of the Gender Order are authorized by general statutory mandates, citing as an example a requirement that HUD

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 7
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Continuum of Care program grants recipients comply with terms and conditions that the HUD Secretary establishes "to carry out this part in an effective and efficient manner." 42 U.S.C. § 11386(b)(5). Yet the Administration does not, and cannot, explain how "promotion of gender ideology" bears any relationship to the efficient administration of housing-related grants. Defendants' critique of the *ejusdem generis* analysis in *Turner* fails to distinguish between *statutorily* authorized grant conditions, such as those in 42 U.S.C. § 11386(b) which protect the dignity of individuals experiencing homelessness, and the Gender Order's executive fiat, which is directed at advancing the Administration's agenda regarding recognition of LGBTQ+ individuals.

Finally, the Administration further presses that Seattle's Separation of Powers claim fails because DOT, DOJ, and HHS have not "incorporated the Gender Order into grant terms." This is a red herring. Seattle seeks to enjoin *any potential application* of the Gender Order to its federal grants. The Administration is not promising that it will *not* enforce the Gender Order, which broadly dictates that "federal funds shall not be used to promote gender ideology" and directs *each* agency to "assess grant conditions and grantee preferences to ensure grant funds do not promote gender ideology." Gender Order, Section 3(g); *see also* FTA MA 33 (stating that FTA may take enforcement action if recipients violate applicable requirements, including an "executive order").[5]

### C. The Unlawful Orders Are Appropriate Targets of a Due Process and Void for Vagueness Claim.

In arguing that Seattle's due process and void-for-vagueness claims are inapplicable to the Orders, the Administration ignores recent case law invalidating other executive orders issued by President Trump on the same grounds. For example, in *Santa Cruz Lesbian & Gay Community Center v. Trump*, a California federal court concluded that the plaintiff was likely to succeed on the merits of its due process challenge and void-for-vagueness challenge to a Trump

---

[5] FED. TRANSIT ADMIN., FTA MASTER AGREEMENT, VERSION 33 (Apr. 25, 2025), https://www.transit.dot.gov/funding/grants/grantee-resources/sample-fta-agreements/fta-masteragreement-version-33-april-25.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 8
(Case No. 2:25-cv-01435-BJR)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Administration executive order containing similarly vague prohibitions on "promotion" and "inculcat[ion]" of "divisive concepts." 508 F. Supp. 3d 521, 545 (N.D. Cal. 2020). The court noted that the language in the executive order was "so vague that it is impossible for Plaintiffs to determine what conduct is prohibited." *Id*. at 543.

Tellingly, Defendants do not attempt to distinguish *County of Santa Clara v. Trump*, discussed extensively in Seattle's opening brief, which also considered a constitutional void-for-vagueness claim as applied to a Trump executive order. 240 F. Supp. 3d 497 (N.D. Cal. 2017). The *Santa Clara* court concluded that the executive order at issue was impermissibly vague due to its failure to define key terms or make clear "what conduct might subject a state or local jurisdiction to defunding enforcement action." *Id*. 534–35; *see also Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 175 (D.D.C. 2025) (appeal pending) (stating that "[c]ourts apply [the void for vagueness] doctrine to review both civil and criminal laws" and listing cases). *Santa Clara* also specifically rejected the Administration's argument that a local government has no legitimate claim to grant funds and thus no property interest protected by the Due Process Clause. *See* 240 F. Supp. 3d at 536 ("A state or local government has a legitimate claim of entitlement to congressionally appropriated funds, which are akin to funds owed on a contract.") (citing *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 577 (2012) ("NFIB")).

**D.    The Executive Orders Coerce the City's Compliance with Trump Administration Policies in Violation of the Tenth Amendment.**

The Administration's opposition to Seattle's Tenth Amendment anti-commandeering challenge is similarly unpersuasive. With approximately $370 million at stake affecting vital programs and resident services, Seattle cannot simply "forgo federal funds" due to the illegal conditions therein. ECF No. 18 at 13. The Administration also cites no cases supporting its position that the Tenth Amendment only comes into play when states alone are commandeered by an executive order, or that the threat of FCA enforcement and loss of up to $370 million in federal

PLAINTIFF'S REPLY IN SUPPORT OF MOTION  
FOR PRELIMINARY INJUNCTION – 9  
(Case No. 2:25-cv-01435-BJR)

**Corr Cronin LLP**  
1015 Second Avenue, Floor 10  
Seattle, Washington 98104-1001  
Tel (206) 625-8600  
Fax (206) 625-0900

grant money is not coercive. Indeed, *NFIB* and the cases cited therein support the opposite conclusion. *See NFIB*, 567 U.S. at 581 (threat of loss of all Medicaid funding was a "gun to the head"); *see also City & Cnty. of San Francisco v. Trump*, 783 F. Supp. 3d 1148, 1186 (N.D. Cal. 2025) (Trump Administration executive order coerced so-called "sanctuary jurisdictions" into enforcing immigration laws by threating the loss of federal funds); *cf. South Dakota v. Dole*, 483 U.S. 203, 211 (1987) (no coercion when the financial inducement was only 5% of highway funds).

### E. Defendants Provide No Rational Basis for the Funding Conditions Sufficient To Defeat an APA Claim.

The Administration challenges Seattle's APA claim on the basis that the unlawful funding conditions in the Orders are "rational" because they are not new requirements. ECF No. 18 at 14. This argument is baseless. Existing statutes and grant conditions already prohibit discrimination. The Orders (and the agencies' numerous pronouncements concerning their scope and effect) were issued to use the power of the purse and the DOJ's FCA enforcement authority to strongarm grant recipients into adopting the Administration's policy agenda which itself undermines existing anti-discrimination law by imposing new unlawful requirements on grant recipients. *See Turner*, F. Supp. 3d at 888 (noting that the agency defendants offered no reasonable explanation for imposing new grant conditions beyond "rote incorporation of [the Orders]").

### F. The Equities Favor Seattle.

For the reasons outlined above, the irreparable harm Seattle faces in the absence of an injunction tips the balance of equities sharply in its favor. As was true in *Turner*, "Defendants have not posited any anticipated (let alone likely) non-monetary harm they will experience if an injunction were to issue" and "Defendants do not have a legitimate interest in ensuring that funds are spent pursuant to conditions that were likely imposed in violation of the APA and/or the Constitution." *Id.* at 892.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 10
(Case No. 2:25-cv-01435-BJR)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**G.      The Court Should Deny Defendants' Request for a Stay and a Bond.**

The Court should deny the Administration's request for a bond and stay for the same reasons as given in *Turner*. *Turner*, 2025 WL 2322763 at *16. Defendants make no attempt to justify their request for a stay, which is particularly unwarranted given the public interests at stake in this litigation. *See Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) ("Federal courts have consistently waived the bond requirement in public interest environmental litigation, or required only a nominal bond.") (citing *People of State of Calif. ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319 (9th Cir.1985)). Unlike private plaintiffs, the City of Seattle's bond ratings are public—and AAA-rated.[6] The Administration's claim that the issuance of an injunction necessitates posting a bond is therefore illogical.

### III.      CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's Motion, the City of Seattle respectfully asks this Court to enjoin Defendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them, and all other federal Departments and Agencies, from enforcing Section 3(b)(iv) of the Anti-Diversity Order and Section 3(g) of the Gender Order against Seattle, and to deny the Defendants' request for a stay and a bond.

//
//
//
//
//

---

[6] *See Fitch Rates Seattle, WA's $77.5MM 2025 LTGO Improvement & Refunding Bonds "AAA; Outlook Stable"*, Fitch Ratings (May 29, 2025), https://www.seattle.gov/documents/Departments/InvestorRelations/2025%20Documents/Fitch%20Rates%20Seattle.pdf

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 11
(Case No. 2:25-cv-01435-BJR)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 30th day of September, 2025.

CORR CRONIN LLP

*s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith, WSBA No. 30954
Emily J. Harris, WSBA No. 35763
Eric A. Lindberg, WSBA No. 43596
Kathryn Joy, WSBA No. 60056
Rachel E. Hay, WSBA No. 60245
Renee M. Howard, WSBA No. 38644
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600 | Fax: (206) 625-0900
jcoopersmith@corrcronin.com
eharris@corrcronin.com
elindberg@corrcronin.com
kjoy@corrcronin.com
rhay@corrcronin.com
rhoward@corrcronin.com

*Attorneys for Plaintiff City of Seattle*

PLAINTIFF'S REPLY IN SUPPORT OF MOTION
FOR PRELIMINARY INJUNCTION – 12
(Case No. 2:25-cv-01435-BJR)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900