The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CITY OF SEATTLE,

                      Plaintiff,

        v.

DONALD J. TRUMP, *et al.*,

                    Defendants.

Case No. 2:25-cv-01435-BJR

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SECOND PRELIMINARY INJUNCTION MOTION**

Plaintiffs' arguments in their second preliminary injunction motion largely rehash those made in support of their first preliminary injunction motion, and in the related case before this Court, *King County v. Turner*. Defendants acknowledge that the Court has thus far found Plaintiffs' arguments convincing, but respectfully must continue to oppose them for the reasons set out below. Because the Court has already heard many of these arguments, Defendants do not believe a hearing on this motion is necessary.

## BACKGROUND

The Court is familiar with the facts and allegations at issue through the briefs and orders in this case and *King County*. Defendants note the following factual and legal developments since their last briefing in these cases.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

First, five of the new plaintiffs added to this lawsuit—Allegheny County, PA; City of Columbus; Hennepin County; City of Portland; and Ramsey County—are already plaintiffs in *King County*, where DOT, HUD, and HHS have already been enjoined from imposing or enforcing the conditions that are the subject of this motion. DOT, HUD, and HHS therefore respectfully request that the Court carve out these five plaintiffs from any injunction regarding these agencies' implementation of the challenged grant conditions.

Second, the April 2025 version of the HHS Grants Policy Statement that Plaintiffs quote in their motion (Dkt. 61 at 9) has not been in effect for nearly a year and is not applied to any current grant. It was superseded in July 2025 by a revision made retroactive to April 2025—and that revision and subsequent versions do not contain the DEI language Plaintiffs quote and rely on. *See, e.g.*, HHS Grants Policy Statement (July 24, 2025) at 3, *available at* https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-july-2025.pdf (last visited May 22, 2025). Plaintiffs' arguments seeking to enjoin that language are therefore moot, and HHS respectfully asks the Court to deny them.

Third, the language in the current HHS Grants Policy Statement relating to Executive Order 14,168 is subject to a universal injunction issued by the District of Rhode Island in *Rhode Island Coalition Against Domestic Violence, et al. v. Kennedy, et al.*, No. 1:25-cv-342 (D.R.I.), and therefore is not being enforced as to any HHS grant recipient. Plaintiffs' assertions of injuries as to this language are therefore meritless. Similarly, HUD's certifications implementing the challenged Executive Orders are subject to that same injunction and are not being enforced as to any HUD grant recipient. Indeed, the rejected CDBG Annual Action Plan that Seattle identifies as an example of injury (Dkt. 61 at 12; *see* Dkt. 42, ¶ 90) was accepted and approved, and the funds were made available, in January 2026, pursuant to that injunction. As further elaborated below, the Court should refrain from issuing an overlapping injunction for reasons of comity.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fourth, three months ago, the Fourth Circuit vacated a preliminary injunction issued by the District of Maryland that had enjoined enforcement of the same provisions of Executive Order 14,173 (the DEI Order) which Plaintiffs ask this Court to enjoin. *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86 (4th Cir. 2026) ("*NADOHE*"). The Fourth Circuit found that the district court's injunction constituted "clear error" because, as Defendants have argued in this case, a facial challenge to these provisions was premature and inappropriate. *Id.* at 101-02. That same reasoning should apply here.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The moving party must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Id.* at 20.

Preliminary relief is meant to preserve the status quo pending final judgment. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). When it would instead "order a responsible party to take action," it is "particularly disfavored." *Id.* (citation omitted). In such cases, the moving party "must establish that the law and facts *clearly favor* [his] position, not simply that [he] is likely to succeed." *Id.* (emphasis original).

## ARGUMENT

This Court should deny Plaintiffs' second preliminary injunction motion for the same reasons set out in Defendants' prior briefs here and in *King County*. To justify an injunction, a petitioner must establish that: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. But here, Plaintiffs cannot

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

show they are likely to succeed on the merits of their claims. Nor can they show imminent likelihood of irreparable harm. And the public interest and balance of equities support enforcement of Congressional mandates and do not support granting the likely largely irreversible remedy Plaintiffs seek here. But if the Court does choose to grant any injunction in this case, it should be narrowly tailored, secured by a bond, and stayed pending Defendants' decision whether to appeal again.

**I.    Plaintiffs Have Not Shown They Are Likely To Succeed on the Merits**

**A.  The Challenged Conditions Do Not Violate the Administrative Procedure Act**

As a preliminary matter, while Plaintiffs urge the Court to "set aside" both the challenged grant conditions and the Executive Orders themselves under the APA (Dkt. 61 at 13), the APA does not apply to a President's Executive Orders. *Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992); *State v. Su*, 121 F.4th 1, 15 (9th Cir. 2024) ("[T]he President's actions are not reviewable under the APA because the President does not meet the definition of 'agency.'"). Plaintiffs' APA challenge thus may proceed only against agencies' actions implementing the Executive Orders, not directly against the Orders. *Su*, 121 F.4th at 15.[1] And the challenge to their implementation fails.

The funding conditions at issue here require recipients of federal funding to (1) certify that they comply with federal anti-discrimination law and, in some cases,[2] acknowledge that such

---

[1] For the same reason, Plaintiffs may not seek an injunction under the APA against agencies which have taken no action against Plaintiffs. Plaintiffs offer no evidence or argument that the Office of Management and Budget nor the Office of Federal Contracts Compliance Programs have ever issued any grant to Plaintiffs, let alone implemented these Executive Orders in the conditioning of those grants. (This is unsurprising, given neither institution actually issues any grants.) Thus, even if the Court grants Plaintiffs' motion, these agencies and their directors must be excluded from it.

[2] EPA's grant terms and conditions, for instance, do *not* contain a materiality clause. This is only one example of the overbreadth of Plaintiffs' motion.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

compliance is material to the government's grant award, implementing Executive Order 14,173, and (2) agree that program funds will not be put to specified unapproved uses, implementing Executive Order 14,168. These conditions were lawfully imposed pursuant to the relevant agencies' statutory authority, and to the extent the agencies were required to explain the conditions, they did so reasonably.

> i.    *The antidiscrimination funding conditions and related materiality certifications are authorized by Title VI*

In implementing Executive Order 14,173, the defendant agencies require recipients of grant funding to certify their compliance with federal anti-discrimination law and, in some cases, agree that their compliance is material to the government's payment decisions for purposes of the False Claims Act. These conditions are neither novel nor unlawful: by calling attention to recipients' pre-existing obligation to comply with the law, the agencies are not imposing any new obligations on recipients.

Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with federal anti-discrimination law. 42 U.S.C. § 2000d. Title VI further "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.* § 2000d-1. Pursuant to that authority, and decades before the issuance of the Executive Orders challenged here, the defendant agencies promulgated regulations requiring that applications for financial assistance include, as a condition of payment, assurances that the recipient complies with federal anti-discrimination law. 6 C.F.R. § 17.115 (DHS); 7 C.F.R. § 15.4 (USDA); 10 C.F.R. § 1042.115 (DOE); 24 C.F.R. § 1.5 (HUD); 28 C.F.R. § 42.105 (DOJ); 29 C.F.R. § 31.6 (DOL); 40 C.F.R. § 7.80 (EPA); 49 C.F.R. § 21.7 (DOT); 45 C.F.R. § 80.4 (HHS). *See also Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 629-30 & n.22 (1983) (Marshall, J., dissenting) (explaining that "[e]very application for Federal financial assistance

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

must, 'as a condition to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI and with all requirements imposed pursuant to the executive regulations issued under Title VI"). Indeed, DOJ regulations require "federal agencies which extend financial assistance" to "properly enforce title VI . . . and similar provisions in federal grant statutes." 28 C.F.R. § 42.401.

The Fourth Circuit in *NADOHE* held that Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs, simply seeks to have grantees certify compliance with what "existing federal law already demands." 167 F.4th at 104. The anti-discrimination conditions at issue here, which implement that Executive Order, are no different. As in *NADOHE*, what Plaintiffs here really seek to enjoin is "how the Administration and its agency actors interpret antidiscrimination law." *Id.* But the agencies' possible future interpretations of the law are not a proper subject of attack. Rather, *if* the agencies later seek to terminate a grant based on what Plaintiffs believe is a misinterpretation of federal antidiscrimination law, the grantee then "can challenge that interpretation in a specific enforcement action." *Id.* (citation omitted). In the current posture, however, this Court, like the Fourth Circuit, is bound by the actual text of the challenged grant conditions. And those conditions are plainly lawful on their face under Title VI and regulations issued under Title VI. 42 U.S.C. § 2000d-1.

Lastly, Plaintiffs are wrong to suggest that the certification unlawfully lowers the government's burden under the False Claims Act. Dkt. 61 at 15-16. Whether a false statement is material under the False Claims Act is a holistic inquiry, and the government's "decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive." *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016). Thus, plaintiffs' certification would be evidence of materiality, and reasonably so: the condition puts

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

plaintiffs on notice that "for some special reason [the representation] is likely to induce the [government] to manifest [its] assent to the transaction." *Id.* at 193 (quotation marks omitted) (first alteration in the original). But the condition does not lower the standard required under the False Claims Act, and plaintiffs would remain free to challenge materiality, and the relevance of their certification, if any False Claims Act suit were ultimately filed.

As for the agencies' implementation of Executive Order 14,168, while Plaintiffs' briefing paints with a broad brush, they appear to challenge such conditions only as to the FAA, and as to the Title IX condition imposed by HHS and several of its subagencies. Dkt. 61 at 8-9. As noted above, Plaintiffs cannot claim any imminent threat of injury as to HHS's (or HUD's) Title IX condition, because it has already been enjoined by another court. *See RICADV v. Kennedy*, 812 F. Supp. 3d 180, 200-03 (D.R.I. 2025). And the notion that FAA's grant conditions implementing the Gender Order exceed its statutory authority is ludicrous—which may explain why Plaintiffs do not argue it, presenting argument solely as to the DEI Order. *See id*. at 13-14. To state the obvious, it is difficult to understand how the FAA could be exceeding its statutory authority by barring grantees from spending its grant funds on an issue completely unrelated to its grant programs.

        *ii.     The defendant agencies did not act arbitrarily or capriciously in imposing the challenged funding conditions*

For similar reasons, Plaintiffs cannot show that the defendant agencies acted arbitrarily and capriciously. Even assuming that the imposition of the conditions is subject to arbitrary-and-capricious review, notwithstanding the absence of any statutory standards governing the choice of conditions, *but cf. Lincoln v. Vigil*, 508 U.S. 182, 192-94 (1993), the agencies acted well "within a zone of reasonableness" in imposing conditions of funding that (1) require federal funding recipients to certify that they comply with federal civil rights law, as required by Title VI, and (2) track existing restrictions on the use of their grant funds. *Barton v. Office of Navajo*, 125 F.4th

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

978, 982 (9th Cir. 2025) (quotation marks omitted). The Court should not "substitut[e] its judgment" for that of the agencies. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983).

Similarly, assuming that the agencies were required to explain the conditions, the defendant agencies did so "reasonably." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency's determination must be upheld if "its path may reasonably be discerned." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1181 (9th Cir. 2019) (quotation marks omitted). As set out above, many of the conditions Plaintiffs challenge here have been in place for decades, pursuant to Title VI. As to any newer conditions, ironically, the agencies explained their rationales in many of the self-same statements that Plaintiffs simultaneously attack as evidence the agencies are acting *ultra vires*. *E.g.*, Dkt. 61 at 6-11. Moreover, in most cases, the rationale for the updated conditions is self-evident on their face, since they reference Executive Orders, which in turn provide policy justifications for the conditions. Under the APA's "deferential arbitrary-and-capricious standard," these explanations are sufficient. *Prometheus Radio Project*, 592 U.S. at 417; *see Motor Vehicle Mfrs.*, 463 U.S. at 43.

### B. The Executive Orders and the Challenged Conditions Do Not Violate the Spending Clause

Plaintiffs argue that the Executive Orders and challenged conditions exceed Congress's power under the Spending Clause because they are ambiguous and not germane to the programs at issue. Dkt. 61 at 17-18.[3] Plaintiffs are wrong on both counts.

First, Plaintiffs' argument is nonsensical as applied to the Executive Orders (and, thus, illustrate why facial challenges are disfavored). The Executive Orders do not specify any particular

---

[3] Plaintiffs' argument that the conditions are "coercive" (Dkt. 61 at 18) largely duplicates their Tenth Amendment argument and therefore is addressed below. *See infra* § I.D.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

program to which these conditions should apply, but instead instruct the agencies to determine where and how best to apply them consistent with the law. Plaintiffs' argument therefore cannot be squared with the plain text of the Orders, by which the Court is bound. *Accord NADOHE*, 167 F.4th at 102, 104 ("What plaintiffs are really asking us to do is read subtext into the Provision's text. . . . Instead, we're bound by the text.").

Next, plaintiffs confuse the question whether the federal government has imposed conditions "unambiguously" with whether the conditions are themselves unambiguous. The Spending Clause requires that the federal government's "intent to condition funds on a particular action . . . be authoritative and unambiguous," so recipients can "'exercise their choice knowingly.'" *Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). But the Spending Clause does not require the federal government to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). Indeed, the conditions themselves may be "largely indeterminate," so long as "the existence of the condition itself—in exchange for the receipt of federal funds—" is made "explicitly obvious." *Id.* (quotation marks omitted). The challenged conditions readily satisfy this test. Plaintiffs have identified no ambiguity about whether they, as recipients of federal grants, are subject to the conditions at issue here; that is why they filed this lawsuit.

Plaintiffs are also incorrect in arguing that the challenged conditions violate the Spending Clause because they are "wholly unrelated to the funds." Dkt. 61 at 18. The Supreme Court "ha[s] suggested (without significant elaboration) that conditions on federal grants *might* be illegitimate if they are unrelated to the federal interest in particular national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (emphasis added) (quotation marks omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

But these funding conditions, which ensure federally-funded programs comply with federal civil rights laws, and/or limit how recipients can use federal funds, readily satisfy the requirements of the Spending Clause. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 580 (2012) ("*NFID*") (Congress may condition the receipt of funds on the recipient's compliance "with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'"). Plaintiffs' contrary argument, which suggests that they have a constitutional right to, for example, spend housing or transportation funds on programs that violate federal antidiscrimination law, or that promote their own view of gender ideology, is difficult to fathom. The discrimination conditions also satisfy the Spending Clause's "low-threshold relatedness test": by requiring recipients to certify that they do not operate programs that violate federal civil rights laws, the conditions further the federal government's interest in ensuring that it does not fund programs or activities that unlawfully discriminate. *Mayweathers*, 314 F.3d at 1067 (denying a germaneness challenge to the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*, because "Congress has a strong interest in making certain that federal funds do not subsidize conduct that infringes individual liberties"). And conditions that ensure recipients do not spend federal funds on programming unrelated to purpose of the grant—for example, using transportation grant funds to promote a given view of gender—are, by definition, related to the purpose of the grant.

### C.  The Challenged Conditions Are Not Unconstitutionally Vague

Plaintiffs argue that the Executive Orders are "vague" because they "impose unclear prohibitions that leave Additional Plaintiffs guessing as to how to comply." Dkt. 61 at 18-19. But, as the Fourth Circuit recently explained, this facial challenge is foreclosed by the Supreme Court's decision in *Finley v. National Endowment for the Arts*, 524 U.S. 569 (1998). *See NADOHE*, 167 F.4th at 101.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In *Finley*, plaintiffs brought vagueness challenges to a funding provision that required the National Endowment for the Arts to "take[] into consideration general standards of decency and respect for the diverse beliefs and values of the American public." 524 U.S. at 572 (citation omitted). The Court acknowledged that these terms were "undeniably opaque, and if they appeared in a criminal statute or regulatory scheme, they could raise substantial vagueness concerns." *Id.* at 588. But "when the Government is acting as patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Id*. at 589.

Here, "[t]ry as they might, Plaintiffs can't wriggle out from under *Finley*'s weight." *NADOHE*, 167 F.4th at 102. As the Fourth Circuit observed, *Finley* affords "greater latitude for vagueness in funding decisions" than in, for example, a criminal statute, and that latitude "bars a facial challenge" to the Executive Orders here. *Id.* at 102 (quoting *Finley*, 524 U.S. at 588). Indeed, Plaintiffs must clear a higher bar here than in *Finley*, because "*Finley* addressed Congress's guidance to an independent agency about its funding decisions," whereas this case involves "the President's directive to his subordinates about how they should allocate federal funding based on the President's priorities." *NADOHE*, 167 F.4th at 102. "If the Supreme Court didn't find vagueness concerns in the former," the Fourth Circuit concluded, it was "hard-pressed to see how [it] could for the latter." *Id.*; *see also id.* ("Because [p]laintiffs are not those to whom the provisions are directed, the fair notice aspect of the vagueness doctrine is a poor fit." (citation omitted)).

Moreover, the Fourth Circuit rejected the grantees' attempt to advance their facial challenge by identifying "instances in which (in [the grantees'] view) agencies have enforced the Termination Provision in an 'arbitrary and discriminatory' manner." *Id.* at 102 (citation omitted). It explained that "[t]he Provision's plain text doesn't terminate any contracts, nor does it directly regulate non-governmental conduct, so by relying on this enforcement evidence, plaintiffs blur the line between a facial and as-applied challenge." *Id.* At most, the Fourth Circuit explained, any

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

allegation that "government actors have terminated grants or contracts 'without regard to their legality,'" provides grounds for as-applied claims against "*those* actors for terminating *those* contracts." *Id.* (emphasis in original). But Plaintiffs here bring no such as-applied claim: as set out below, their claims of injury rest entirely on speculation about possible future enforcement.

For the above reasons, the Fourth Circuit concluded, the challenged provisions of the Executive Orders satisfy both "due process demands [for] fair notice and prohibit[ion] [against] arbitrary enforcement." *Id.* at 101. This Court should conclude the same.

## D.  The Executive Orders Do Not Violate the Tenth Amendment

Plaintiffs' argument that the Orders unlawfully "coerce [them] to adopt the Administration's view of DEI and 'gender ideology'" (Dkt. 61 at 19-20) fails because the federal government can lawfully use federal dollars to induce localities to adopt policies, and localities are free to choose to forgo funding if they dislike those policies.

The anticommandeering doctrine prevents the federal government from "compel[ling] the States to enact or enforce a federal regulatory program." *Murphy v. NCAA*, 584 U.S. 453, 472 (2018). But it does not apply "when Congress evenhandedly regulates an activity in which both States and private actors engage." *Id.* at 475–76. And there is no question that the federal government can, constitutionally, use conditions on federal funds to "induce the States to adopt policies that the Federal Government itself could not impose." *NFIB*, 567 U.S. at 537–38. Here, the Orders apply to agencies' grants of federal funds to *any* recipient—private parties and nonprofits, not just States or local governments. *See* E.O. 14168, § 3(g); EO 14173, § 3(b)(iv). Given that broad sweep, Plaintiffs cannot make "the heavy lift" that the challenged executive orders "command[] the States to deploy their executive or legislative power." *Haaland v. Brackeen*, 599 U.S. 255, 284–85 (2023).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

And as to the implementation of the Orders through grant conditions, the offer of certain funds based on certain conditions is by no means "a gun to the head" of Plaintiffs. Dkt. 61 at 19 (quoting *NFIB*). Plaintiffs always may forego federal funds if they are conditioned on terms that Plaintiffs find unpalatable, and raise funds from other sources instead. *See Oklahoma v. United States*, 62 F.4th 221, 235 (6th Cir. 2023) (funding conditions "present[] States with a choice, not a command"). That the latter option may be politically difficult does not transform Plaintiffs' policy disagreement with the Administration into a constitutional violation. "[A]s long as the alternative to implementing a federal regulatory program does not offend the Constitution's guarantees of federalism, the fact that the alternative is difficult, expensive or otherwise unappealing is insufficient to establish a Tenth Amendment violation." *Env't Def. Ctr. v. EPA*, 344 F.3d 832, 847 (9th Cir. 2003) (quotation omitted).

Plaintiffs' reliance on *NFIB* is unavailing. There, the Supreme Court found parts of the Affordable Care Act to be coercive through a two-step analysis. First, the Court reaffirmed "Congress's authority to condition the receipt of funds on the States' complying with restrictions on the use of those funds, because that is the means by which Congress ensures that the funds are spent according to its view of the 'general Welfare.'" 567 U.S. at 580. It observed, however, that when conditions on grants "take the form of threats to terminate *other significant independent grants*," they could constitute unconstitutional "pressure" on the states. *Id.* (emphasis added) Accordingly, it determined the Affordable Care Act could violate the Tenth Amendment because, "[i]nstead of simply refusing to grant the new funds to States that will not accept the new conditions, Congress has also threatened to withhold those States' existing Medicaid funds." *Id.* at 579–80. Only after establishing that the conditions in that case threatened other "independent grants" did the Court move on to the second step of its analysis: it examined those threatened grants to determine their significance, and, in the case of the Affordable Care Act, found they were

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

so large as to be highly significant. *Id.*

Here, Plaintiffs conclusorily argue that conditioning their grant funds is "coercive" under *NFIB*—by eliding *NFIB*'s two analytical steps into one. But their Tenth Amendment claim in fact fails at the first step, because the challenged grant conditions do not threaten any "independent" grant funds: if enforced against any funded program, they will affect only the funds that go to that program.

And this first step of the *NFIB* analysis is essential—for without it, *any* widely implemented federal condition on state and local funding would be unconstitutional simply by virtue of being widely implemented. At the time *NFIB* was decided, more than one-third of state and local government expenditures came from federal grants. *NFIB*, 567 U.S. at 674 (Scalia, Kennedy, Thomas, and Alito, JJ., dissenting). Fifteen years later, the proportion of state and local budgets that are federally funded has likely only grown. But many grant conditions are widely used across the federal government, and even statutorily required. For example, set out above, since 1964, *all* federal grants have been conditioned on a promise that the grantee will comply with federal antidiscrimination laws. *See Guardians Ass'n*, 463 U.S. at 629–30 (Marshall, J., dissenting) (citing 42 U.S.C. § 2000d). And since 1996, *all* federal grants have come with the condition that they cannot be used to confer benefits on undocumented immigrants. *See* 8 U.S.C. § 1611(c)(1)(A). But under Plaintiffs' overbroad reading of *NFIB*, any such widely imposed conditions would be rendered unconstitutionally coercive, simply because so much of local governments' funding derives from the federal government. That is not the law.

Finally, Plaintiffs' Tenth Amendment argument is particularly flawed as applied to the antidiscrimination conditions. Again, as the Fourth Circuit held, grantees are simply asked to certify that they do not operate programs that violate federal civil rights law, as Title VI already requires. *NADOHE*, 167 F.4th at 104; *see* 42 U.S.C. § 2000d ("No person in the United States

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

shall, on the ground of race, color, or national origin" be subjected to discrimination "under any program or activity receiving Federal financial assistance."); *see also id.* § 2000d-4a(1)(A) (for purposes of Title VI, "program or activity" means "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government"). Plaintiffs' argument thus can only proceed on the proposition either that Title VI is unconstitutional, or that the discrimination conditions here are somehow materially different from Title VI. But neither proposition is tenable.

## II.     Plaintiffs Have Not Shown They Face Imminent, Irreparable Harm

Plaintiffs have not carried their burden of showing that imminent, irreparable harm "is likely, not just possible," as required to justify an injunction. *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011).

First, a majority of the newly-added plaintiffs in this case are plaintiffs in *King County*, where DOT, HUD, and HHS are already enjoined from enforcing the challenged grant conditions against them. There is no question that these plaintiffs cannot show imminent harm from already-enjoined agencies. Thus, even if the Court issues a new injunction in this lawsuit, these plaintiffs should be carved out as to any injunction placed on DOT, HUD, and HHS.

Second, and similarly, as noted above, many of the challenged conditions are already enjoined by an injunction issued by the District of Rhode Island in *RICADV* v. *Kennedy*. Again, then, plaintiffs cannot show imminent harm as to these conditions, and they should be carved out of any new injunction issued here.

Third, as to the remaining plaintiffs, agencies, and conditions, speculative injury is not sufficient: "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis original). And Plaintiffs' briefing demonstrate the opposite: the injuries they

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

describe consist of repeated speculation that they *might* lose funding. *See* Dkt. 61 at 20-26. But not a single Additional Plaintiff claims to have in fact lost funding: their claimed injury is merely "uncertainty." *Id.* at 20.

Second, Plaintiffs contend that absent an injunction, they will be forced to choose between forgoing grant funds and accepting conditions they believe are unlawful. But plaintiffs can avoid such harms by accepting the challenged conditions during the pendency of this litigation. Plaintiffs have not shown that doing so would be costly, particularly because the conditions largely mirror existing legal obligations. Plaintiffs have not shown and cannot show that an injunction against conditions that require them to comply with existing laws—for example, Title VI, the Hyde Amendment, or PRWORA—would redress any injury that might be caused by some future effort to enforce those laws against plaintiffs in contexts in which plaintiffs have a good-faith belief that their conduct is lawful. That is, the government could still seek to enforce Title VI, the Hyde Amendment, or PRWORA, in such circumstances, with or without these conditions. And, with or without these conditions, plaintiffs could not be held liable under the False Claims Act if they have a good-faith belief that their conduct is lawful.

### III.    The Public Interest and Balance of Equities Do Not Favor an Injunction

A preliminary injunction also is not appropriate here because the balance of the equities and the public interest tip in Defendants' favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (holding "[t]hese factors merge when the Government is the opposing party"). Plaintiffs' arguments to the contrary ignore the clear injury to Defendants' ability to effectuate Executive Branch policy. The government has a strong interest in ensuring that recipients of federal funds comply with applicable laws and use federal dollars only for approved uses. The public interest is harmed when the United States is forced to pay out funds that it may not be able to recover. *See, e.g.*, *Dep't of Educ. v. California*, 604 U.S. 650, 652 (2025).

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plaintiffs attempt to bolster their equitable arguments by claiming the conditions are unconstitutional. Dkt. 61 at 26. But even if plaintiffs are correct that the Administration lacks statutory authority to impose the challenged conditions, any such statutory violations would not amount to violations of the Constitution. *See Dalton v. Specter*, 511 U.S. 462, 473-74 (1994) ("[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."). In *Dalton*, the Supreme Court explained that the court of appeals erred in concluding that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." 511 U.S. at 471. Plaintiffs urge the Court to make the same error here. And for the reasons explained above, *see supra* §§ I.B-C, Plaintiffs have not shown that the challenged conditions likely violate the Spending Clause or are unconstitutionally vague.

**IV.    The Court Should Stay Ruling on this Motion Until the Ninth Circuit Issues a Decision in *King County***

As the Court is aware, the defendants in the *King County* case appealed from the Court's first preliminary injunction order. *See Cnty. of King v. Turner*, No. 25-3664 (9th Cir.). That appeal is fully briefed and was argued and submitted on February 9, 2026. *See id.* Dkt. 51. The Ninth Circuit's decision on that appeal will likely provide further guidance on the parties' arguments on this motion and may even moot some of them entirely. Defendants therefore respectfully suggest that it would be most efficient for the Court to stay, either this motion, or any injunction issued as a result of this motion, until the Ninth Circuit issues its ruling in *King County*.

**V.    Any Injunctive Relief Should Be Narrowly Tailored and Permit Lawful Agency Action**

It is a bedrock principle of equity that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*,

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

442 U.S. 682, 702 (1979). Thus, if the Court grants Plaintiffs' motion, any injunction should be far narrower than the vastly overbroad relief Plaintiffs seek here.

First, as noted above, many of the grant conditions Plaintiffs seek to enjoin here are already subject to injunctions issued by the District of Rhode Island in *RICADV*, or by this Court in *King County*. Any new injunction issued here should therefore carve out these plaintiffs, conditions, and agencies.

Second, any injunction should be limited to grants that Plaintiffs actually have or have applied for. Again, Plaintiffs' motion seeks far broader relief than the facts warrant. For example, it appears that only one Plaintiff—City of Columbus—has one EPA grant at issue. Yet Plaintiffs seek broad relief enjoining the EPA's actions as to any of them, at any time. Plaintiffs cannot show this breadth is necessary to afford them "complete relief." *Califano*, 442 U.S. at 702.

Third, Plaintiffs offer no grounds for an injunction against the Office of Management and Budget nor the Office of Federal Contracts Compliance Programs. Nowhere do Plaintiffs explain how either entity has harmed or could harm them. Indeed, neither entity appears to even be mentioned in their motion papers. They should be excluded from any injunction the Court issues.

Fourth, and similarly, any injunction the Court issues should be tailored to what the agencies have actually done (if anything). As just two examples noted above, HHS's terms and conditions do not contain the language Plaintiffs seek to enjoin; and EPA's terms and conditions do not include a materiality certification. The overbroad injunction Plaintiffs seek would require agency employees to sift through the injunction's terms attempting to divine which, if any, of its provisions actually apply to their work. This is not the law. *Califano*, 442 U.S. at 702.

Fifth and last, the Court's prior injunctions here and in *King County* have required the agencies to notify *all* agency employees and contractors of the injunction. The vast majority of agency employees, however, have nothing to do with the issuance or enforcement of grants—for

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

example, air traffic controllers at the FAA, facility inspectors at USDA and DOE, or research scientists at HHS. Defendants therefore respectfully request that any injunction issued here be modified to require notice to all agency employees and contractors involved in grantmaking or enforcement of grant terms.

**VI.    Any Injunction Should Be Stayed Pending Any Appeal and Secured by a Bond**

If the Court issues an injunction, Defendants respectfully request it be stayed pending the Solicitor General's decision whether to appeal and pending any authorized appeal.

Moreover, under Rule 65(c), courts "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." If the Court grants an injunction here, it should require Plaintiffs to post a bond for the value of any grants subject to the injunction. *See Dep't of Educ. v. California*, 604 U.S. at 652 (noting a likelihood of irreparable harm to the government in grant cases where a district court declines to impose a bond on the grantee).

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants request the Court deny the City's motion.

DATED this 22nd day of May, 2026.

Respectfully submitted,

*s/ Sarah Louise Bishop*
SARAH LOUISE BISHOP, NY No. 5256359
Assistant United States Attorney
United States Attorney's Office
Western District of Washington
700 Stewart St., Ste. 5220, Seattle, Wash. 98101
Phone: 206-553-7970/ Fax: 206-553-4067
Email: sarah.bishop@usdoj.gov

*Attorney for Defendants*

I certify that this memorandum contains 5,952 words, in compliance with the Local Civil Rules.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
SECOND PRELIMINARY INJUNCTION MOTION
[Case No. 2:25-cv-01435-BJR] - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970